## PAYMENT BY A WORTHLESS ORDER.

[Circuit Court of Ottawa County.]

J. WELLER CO. v. WASHINGTON GORDON & CO.*

Decided, January, 1903.

*Payment—Where made by a Worthless Order, Check or Other Paper— Not Absolute, Unless—Burden of Proof as to Acceptance—Return of Worthless Paper not Necessary—Presumption as to Written Contract.*

1. The giving of an order, check or other paper in payment of a debt, and its acceptance in due course of business, does not constitute absolute payment in the event the paper proves worthless, unless it clearly appears that the paper was accepted in satisfaction and without regard to its proving to be of the value for which it is accepted; and the burden is upon the party making the payment to show that it was thus accepted.

2. Where, in awarding a contract for the construction of a factory, the owners specify that the contractor shall accept in part payment an order on a citizens' committee for a sum supposed to have been subscribed to secure the location of the factory at that place, and the contractor marks the letter embodying the contract "accepted," but it afterward develops that no citizens' committee was appointed and no money was raised, the order can not be considered as absolute payment, and the tender back of the order not a prerequisite to the bringing of suit for the amount due thereon.

HULL, J.; HAYNES, J., and PARKER, J., concur.

.Error to the Court of Common Pleas of Ottawa County.

The defendant in error was the plaintiff below and brought its action against the J. Weller Company, to recover $700, with interest, which it claimed the J. Weller Company owed it, as a balance due for furnishing the material and constructing a certain building in the. village of Oak Harbor, Ottawa county. The contract was made by correspondence, and is set forth in the petition. The answer admits the correspondence as set forth in the petition; but avers that the $700 was fully paid by

---

*Affirmed without report, *The J. Weller Co. v. Washington Gordon et al,* 70 O. S., 489.

transferring to Gordon & Company a certain order for $700 on the "citizens committee," so called, of Oak Harbor. That order was given by the J. Weller Company to Washington Gordon & Company; and the question in the case is whether it was accepted under the contract, by Gordon & Company, as payment of $700, or whether that was only conditional, and payment not having been made of the order and there being no funds wherewith to pay it, whether Gordon & Company had the right to sue for and recover the $700. There are also some questions made in the case as to the admission of evidence, and especially as to the admission of some evidence which, it is claimed, varied the terms of the written contract between the parties.

It appears from the record that the J. Weller Company, in the year 1898, had built a building, and were carrying on business in Oak Harbor. They were conducting a pickling factory, and, in 1899, they contemplated building a canning factory and desired the citizens of Oak Harbor to contribute toward that enterprise, and a meeting was held at which were present several citizens, just how many does not appear, and one of the members of the J. Weller Company was also present, and one of the firm, Mr. Kilmer, of Gordon & Company. Mr. Weller stated at the meeting that they would build a canning factory if the citizens would contribute $700 toward it. No formal action was taken, but several, or some at least, of those present stated that the sum would be raised, one saying, "We will raise the amount; there will be no doubt about it;" another, "We will raise it." Similar expressions were used by others, and a committee was appointed to solicit subscriptions.

Soon after that Gordon & Company solicited from the Weller Company the contract for building the building and made a bid for it along with others, and the correspondence then occurred between the parties which constitutes the contract in this case. Gordon & Company wrote to the J. Weller Company, as follows, under date of May 12, 1899:

"OAK HARBOR, OHIO, May 12, 1899.
"THE J. WELLER COMPANY, Cincinnati, Ohio.
"*Gentlemen:* We will furnish the lumber for canning factory, as per bill submitted by you, for $975. We will furnish

lumber for erecting building complete as per your letter of April 29, for $1,054.60, and will erect same for you, furnishing everything necessary according to plans, for $415. Respectfully submitted,

"W. GORDON & Co."

On the following day, May 13, the J. Weller Co. answered that letter, as follows:

"CINCINNATI, OHIO, May 13, 1898.
"MESSRS. W. GORDON & Co., Oak Harbor, Ohio.
"*Gentlemen:* Your letter of the twelfth received with proposition to furnish the lumber and erect building for canning factory at Oak Harbor, Ohio, according to the plans furnished you, to-wit, at $1,469.60, the lumber furnished to be of Norway pine, and flooring to the building to be two-inch pine, floor for the second floor to be one-inch yellow pine. The sliding doors you can make all one solid seven-foot sliding doors on good substantial barn rollers, the lumber to be of good merchantable quality and the work to be done in good workmanship manner; we are to furnish windows and skylights for the building and you are to put them in the building. You are to furnish the sheeting for the building and porches, and we are to put the gravel pitch roof on same. The foundation or piers for the building must be set in the ground below the frost level, say two and one-third feet, and to be not less than two feet square at the base and to project above the level of the ground; we prefer the piers would come up level with the floor of the building, if you can do so. The building is to be completed by July 1, 1899, unless providential circumstances beyond your control should interfere, and sooner if you can possibly do so, for every day after July 1, you are to pay us $15 per day until the building is completed; we say this as we must have the building done by this time, in order to get our machinery set up in place.

"The citizens of Oak Harbor are to contribute $700 toward this factory, and we will give you an order on this committee for the $700 and in addition we will pay you the balance of the $1,469.60, which will be $769.60, in cash as soon as the building is completed. You are to board up space under the main part of building and to erect out-house for the use of employes.

"Yours truly,
"THE J. WELLER CO., J. WELLER, *Pres.*"

This letter was marked "accepted," or had stamped upon it the word "accepted," and that was signed by Gordon & Com-

pany, thus making the contract complete. The building was constructed according to the contract, and after that the J. Weller Company sent Gordon & Company a check for $769.60, and also this order:

"CINCINNATI, OHIO, August 7, 1899.

"THE CITIZENS' COMMITTEE OF OAK HARBOR, OHIO, OAK HARBOR, OHIO. ·

"*Gentlemen:* You will please pay to Messrs. Gordon & Company the sum of $700, the amount pledged by your committee on completion of the canning factory and greatly oblige,

"THE J. WELLER CO., J. WELLER, *Pres.*"

"Dictated J. W.

After receiving this order, Gordon & Company, through its officers, undertook to collect it. The testimony shows that there was no citizens committee that had any funds in its hands for the satisfaction of this order. The only committee appointed was one to solicit subscriptions, and subscriptions for a portion of the $700 were made, but no money had ever been turned over to the committee. Mr. Kilmer, of Gordon & Company, called on Mr. Gradolph, the mayor, who was chairman of the citizens meeting, but was unable to ascertain from him, or in any other way, that there was any such fund. As a matter of fact, there was at that time no money, no fund of any kind or in any amount, out of which to satisfy this order. The evidence does show that there was a deposit in a bank, at some time, of fifty dollars—twenty-five dollars deposited by the mayor and twenty-five dollars by someone else which was payable, according to the testimony, to the order of the cashier of the bank, but nothing could be collected on the order. Gordon & Company, being unable to collect it, or any part of it, brought this suit, and, in the court below recovered a verdict and judgment for $700, with interest.

It is claimed by the plaintiff in error that under this state of facts Washington Gordon & Company accepted this order in payment and full satisfaction of the $700; that no recovery can be had. In the trial of the case, Mr. Kilmer testified over the objection of the J. Weller Company that at the time the J. Weller Company's letter was accepted, Mr. Kilmer said to Mr.

Weller that they wanted them to collect this order; that if it became known in Oak Harbor that such a contract as this had been made, it would be very difficult to collect this money, and that Weller promised to collect it. This testimony was objected to by the defendant and exceptions taken to its admission.

We are inclined to the opinion that this testimony ought not to have been admitted; that the contract, as claimed by the defendants, was contained in the correspondence; that this talk that occurred between Mr. Kilmer and Mr. Weller, whatever it was, occurred before the proposition from the Weller Co. had been accepted; and that, therefore, it could not be shown. Whatever the contract was, whatever the parties agreed upon is presumed and conclusively presumed to have been embodied in the written contract, and the parties must stand or fall by that. In our judgment the testimony should have been excluded.

This brings us to a consideration of the question as to whether under the written contract, made as stated in the pleadings, this order was accepted as a payment of the $700, or was conditioned upon the $700 being paid, or there being some fund with which to pay, upon presentation of the order by Gordon & Company. It is claimed by the plaintiff in error that this order was accepted as absolute payment and satisfaction of the amount.

The giving of an order or check or other paper writing under such circumstances is not absolute payment, as we understand it, unless it is shown that it was understood and agreed by the parties to be accepted as payment. It is true that a party may agree to accept a check or a draft or an order in payment of a debt, or as a consideration for work or for goods, and if he does so, he is bound by it, as he would be in any other case of exchange or barter. But unless it is understood that it is accepted as payment, it does not extinguish the debt unless the draft or check or order, or whatever the paper may be, is paid; the party accepting it is bound to present it for payment and use ordinary diligence to collect it. So that the question here is, whether under this written contract, the court should hold that this order was accepted as payment. There are some cases in this state that are in point upon this question. The case

of *Taft* v. *Wildman*, 15 Ohio, 123, is one. This was a case where a piece of land was sold for $800, $400 in cash and the balance in certificates of discharge from the army, which entitled the holder to a certain amount of land. It turned out that the certificates were void. The court say in the syllabus:

"To rescind the contract and recover back the consideration, a thing received in payment of no value need not be returned to the defendant.

"If A sell land to B to receive payments in cash and certificates of discharge from the army, assigned to A, he may sue for the original consideration *quoad hoc* those certificates."

One point made in the case at bar is that the plaintiff could not recover without returning the order that had been given. The case of *Taft* v. *Wildman, supra,* seems to determine the question that if the order was in fact worthless, it need not be returned before the suit is brought. In the case referred to, the trial court charged the jury, as appears in the statement of the case, that—

"* * * if these certificates were supposed by the parties at the time they were assigned, to convey lands or to transfer a right to obtain lands, that the defendant in error was entitled to recover, inasmuch as the assignment of the certificates was made void by the laws of the United States, and vested no interest in him; and the rule of damages in that event would be $400, the amount of which the certificates were estimated by the parties, with the interest thereon; but if the certificates were received by the defendant in error under an agreement that he should take them *at his own risk,* whether they were of value or not, he was not entitled to recover."

This was assigned as error in the Supreme Court and the court held that there was no error in that instruction to the jury. The court say in the opinion on page 129:

"The law is: If C receive of D a thing represented to be valuable, and which C supposes is so, in payment of a debt, but which is in fact of *no value,* C may sue on the original demand for the consideration, as if no payment had been made, and *quoad hoc* treat the thing received as no payment. This transaction was not a barter, however, or exchange of property, as presented in the record, but the sale of a farm, to be paid in cash, and certificates which would entitle the vendor to other

lands, and as this part of the consideration failed, the court did not err, in our opinion, in saying a recovery might be had under the limitations and restrictions set out in the bill of exceptions.''

In the case of *Fleig* v. *Sleet*, 43 Ohio St., 53, a check of one bank upon another was given in payment, and turned out to be worthless. The court says in the syllabus:

''To pay for a bill of goods, the buyer sent to the seller a check, drawn by one bank upon another, indorsed by the buyer to whose order the check was payable, and the seller, on receiving it, sent back the buyer a receipt acknowledging payment of the bill. At the time of sending the check by the buyer, and the receipt by the seller, it was supposed by the buyer and seller that it was good, but in fact there were no funds of the drawer in the hands of the drawee subject to the payment of the check at the time it was drawn or afterwards. *Held:* That in an action on an account for goods sold and delivered, a plea of payment can not be maintained on the facts above stated.''

And the court say on page 55:

''Neither is there any doubt as to the fact that the parties agreed that the transfer of the check was in payment of the account. The sole question is, was the agreement under the circumstances set forth a valid contract, whereby the former relations of debtor and creditor, on account of goods sold and delivered, was in law extinguished?

''It is not controverted that where a debtor makes and delivers a check to his creditor in payment of an account, upon a bank where the debtor has neither funds nor credit, it is not a payment of the account, although the creditor receives it as such. In such case there is no satisfaction of the indebtedness; such check is valueless.    *    *    *

''Is there any difference in effect between the case put and one where the debtor indorses to his creditor a worthless check drawn by a third person who has no funds subject to its payment? We think not. In the hands of the debtor before indorsement it was without value. From the act of indorsement a similar representation is implied, on the faith of which it is taken as payment by the creditor. Between the debtor and creditor there is an accord, but no satisfaction. In law it is like payment in counterfeit money or broken bank bills. The claim thus intended to be paid remains a subsisting cause of action.''

In 18 Am. & Eng. Enc. Law (1 Ed.), 167, the general law is laid down and a large number of authorities cited to sustain it, as follows:

"A cheque, draft or promissory note of a debtor or of a third party, if not itself paid, does not constitute a payment, unless received by the creditor under an express agreement to accept it as an absolute payment."

In Benjamin on Sales, Sections 729 and 730, we find this language:

"The intention to take a bill in absolute payment for goods sold must be clearly shown, and not deducted from ambiguous expressions, such as that the bill was taken 'in payment' for the goods, or in 'discharge' of the price. Lord Kenyon said in *Stedman* v. *Gooch* that 'the law is clear that if in payment of a debt the creditor is content to take a bill or note payable at a future day, he can not legally commence an action on his original debt until such bill or note becomes payable and default is made in the payment; but if such bill or note is of no value, as if, for example, drawn on a person who has no effects of the drawer in his hands and who therefore refuses to accept it, in such case he may consider it as waste paper, and resort to his original demand and sue the debtor; and this dictum was quoted by Tindal, C. J., in *Maillard* v. *Duke of Argyle*, to show that the word 'payment' does not necessarily mean payment in satisfaction and discharge.

"730.    The authorities in support of the rule that in the absence of stipulation to the contrary the negotiable security is only considered to be a conditional payment, defeasible on the dishonor of the security, need not be reviewed, as there is no conflict on the point.

"The payment is absolute on the delivery of the bill, and takes effect from that date, but is defeated by the happening of the condition, *i. e.*, non-payment at maturity."

The law seems to be well settled in this state and elsewhere that the burden is upon the one claiming payment of this kind to show, and show clearly, that such a paper was accepted in absolute payment and discharge of the debt; otherwise it will be held, as Benjamin says, "a conditional payment, defeasible on the dishonor" of the check, bill, order or whatever it may be.

The evidence in this case shows that after the citizens meeting was held, no funds were, in fact, ever collected, except

possibly $50, to which I have referred, which was deposited in the bank; it does not appear that any formal action was taken at this citizens meeting. Several citizens said "no doubt the fund could be raised; Mr. Weller could go on and erect the building," etc., and such expressions were used at the meeting as are often used at meetings of that kind. When it became apparent that the building was to be constructed, the citizens evidently lost interest in the enterprise, so far as subscribing the $700 or any part thereof was concerned, and when Gordon & Company, having agreed to take the order, as they might take a check, note or draft, did take it and went out and undertook to collect it, they were unable to do so, there being no such fund, no committee of that kind and no way in which the order could be realized upon.

Now it will be observed that in this letter from the J. Weller Company to Gordon & Company they say that "the citizens of Oak Harbor are to contribute $700 towards this factory, and we will give you an order on the committee for the $700, and in addition we will pay you in cash the balance of the $1,469.60." They say to Gordon & Co. in substance and effect that the citizens of Oak Harbor will contribute this amount, and we will turn that over to you by virtue of an order or through the medium of an order which we will give you and you can collect it; instead of it being paid to us, it may be paid to you; the balance we will pay you in cash. They do not say in their letter, "You are to accept this order in payment of the balance of the $700," or "in discharge of the balance." They speak of this order as they might of any other chose in action, of a draft or check. They might have said, "We will pay you $769 in cash and we will give you a draft that we have, or a check on such a bank for the balance," if it had been a draft, as it might have been, and it turned out that the bank was broken, or there was no money there to pay the debt, this would not have constituted payment. There is nothing, it seems to us, in this contract, or in the surrounding circumstances to show that the agreement on the part of Gordon & Company was that they would accept this order in full payment of this amount of money and discharge this indebtedness. The burden was upon the J.

Weller Company to show this. Gordon & Company, after receiving the order, did all they could reasonably do toward collecting it, and it is undisputed that there was nothing with which to pay the order.

It is said that Gordon & Company knew of the facts and circumstances as well as the J. Weller Company; that one of the firm was present at this meeting. It is true that one of the firm was there as a citizen of Oak Harbor and took some part in the meeting. But the fact that a member of the firm of Gordon & Company had this knowledge as to this meeting and what was done, would not vary the contract, this written contract that was made, or be sufficient to show that Gordon & Company accepted this order in payment of this debt. The rule seems to be thoroughly established that nothing will pay a debt except money or something of value—its equivalent in value; that worthless papers, worthless checks, notes, orders or drafts will not pay debts, unless the parties have expressly agreed and it clearly appears that they have agreed that they will take such paper at their own risk, and in payment of the debt.

We think that the court ought to have excluded the oral testimony as to what was said before the signing of this acceptance, and that the court went farther than it should have gone in submitting to the jury the construction of the contract; it seems to us, the contract being in writing, that it was the duty of the court to construct it. But the jury reached a correct conclusion and construed the contract properly, so that plaintiff in error was not prejudiced.

We have gone through the record with care, and there is nothing in all the testimony that was offered as to what occurred at the time the contract was made or the order was given to Gordon & Company that shows that they accepted the order in payment of this debt or in discharge of it. We think that they took the order as they might have taken other paper or evidence of indebtedness as a medium of getting their pay, and if it had been paid it would have satisfied the amount that it called for. Being worthless it did not satisfy it; and being of no value they were not called upon to return it or offer to return it before this suit was commenced.

With this view of the case it is not necessary for us to discuss the objections that were made to the charge of the court or any other question in the case. The verdict of the jury was correct and the judgment was right. Therefore the judgment of the court of common pleas will be affirmed.

*Scott Stahl* and *Charles Graves*, for plaintiff in error.

*Judge Kelley* and *William Gordon*, for defendant in error.

---

## DETERMINATION OF OWNERSHIP OF A FUND.

[Circuit Court of Hamilton County.]

HADLEY ET AL V. ELLIS & COMPANY ET AL.

Decided, January 11, 1906.

*Parties—Necessary to an Action—To Determine Ownership of a Fund —Gist of the Proceeding—Service of Summons Quashed as to One of the Parties—Judgment on Pleadings—Error.*

Where in a suit involving ownership of a fund, the debtor admits that the amount in question is due, but a controversy exists as to the division to be made of the fund, and one of the parties to this controversy is dismissed from the action on motion to quash service of summons, it is error for the court to thereafter give judgment on the pleadings.

SWING, J.; JELKE, J., and GIFFEN, J., concur.

This action is here on error to the judgment of the court of common pleas of this county. In that court Ellis & Company brought an action, alleging in substance that it had entered into a contract with Hadley and others, Commissioners of Washington County, Ohio, for the building of a court house at Marietta, Ohio, and that the work was completed. The petition further alleges that it sublet certain portions of the work to the Paige Concrete Fire Proofing Company, who in turn sublet to the Ransome Concrete Company, who in turn sublet certain parts to the Champion Iron Works. That the said Champion Iron Works have filed with the Auditor of Washington County a